*479 OPINION OF THE COURT
Myriam J. Altman, J.
In this small claims action, claimant Elfriede Schedlmayer seeks to recover $1,000, representing cash which disappeared from her hand luggage while it was in the custody of defendant Trans International Airlines (hereinafter TIA). Her claim was rejected by the carrier on the grounds that claimant had been a passenger on a charter flight not covered by the Warsaw Convention and that, even if the Warsaw Convention did cover this flight, at best claimant’s recovery is limited by the terms of the Warsaw Convention.
On July 4, 1978, Mrs. Schedlmayer boarded a chartered TIA flight in Austria. She carried a piece of black hand luggage, which she put under her seat. The airplane was bound for Kennedy Airport in New York, with a stopover at Shannon Airport in Ireland.
After the plane was apparently ready for takeoff and the passengers had fastened their seatbelts, there was a lengthy delay in departure. The passengers received permission to get up and move about the aircraft. Claimant testified that it was very hot and uncomfortable in the plane.
When the plane was again ready for departure, the passengers reclaimed their seats and a stewardess rechecked the location of all hand luggage. The stewardess asked various passengers, including claimant, whether they would like to give her their luggage so that she could store it in the front of the plane. Claimant could see that the passengers’ carry-on luggage was indeed being piled in a front room of the airplane. Mrs. Schedlmayer testified that everything happened so quickly and she was so tired and uncomfortable from the delay, that she agreed without thinking of the contents of her bag, which included approximately $1,300 in American and Austrian currency, a camera, and the writing paper she had intended to use during the flight. Apparently no baggage check was issued for claimant’s hand luggage.
On the flight to Shannon Airport, Mrs. Schedlmayer asked the stewardess for her black bag and was informed that she could not retrieve it until she claimed her baggage at Kennedy Airport. Claimant became very nervous about the security of her money but felt there was nothing she could do.
After the plane crew changed at Shannon Airport, claimant asked the new crew whether she could get her hand luggage. *480 She was told that the luggage was not available and that it must have been stored in the belly of the aircraft. On the flight between Shannon and Kennedy Airports, claimant explained to one of the crew members that her hand luggage contained valuables. That crew member confirmed that Mrs. Schedlmayer would have to wait until she reached the baggage claim area at Kennedy Airport.
Once claimant retrieved her luggage at the airport, she immediately looked inside her black hand luggage and found that her money was gone. Nothing else was missing, not even her camera. Claimant immediately reported the loss to Ms. Donna Cinque, an employee in the TIA Passenger Service Department. TIA searched for the missing money but never located it.
The Warsaw Convention (49 US Stat 3014)[1] applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire” (Warsaw Convention, art 1, subd [1]; 49 US . Stat 3014). The convention is the supreme law of the land, of which New York courts must take notice (Rosman v Trans World Airlines, 34 NY2d 385). Its provisions override any contrary local law (Salamon v Koninklijke Luchtvaart Maatschappij, N. V., 107 NYS2d 768, affd 281 App Div 965) and are to be given their ordinary meaning (Rosman v Trans World Airlines, supra; cf. Palagonia v Trans World Airlines, NYLJ, Jan. 4, 1979, p 14, col 1).
Mrs. Schedlmayer’s flight from Austria to New York falls within the definition of "international transportation” set forth in subdivision (2) of article 1 of the convention (49 US Stat 3014).[2] The fact that claimant’s trip was a charter flight does not take the flight out of the purview of the Warsaw Convention (Molitch v Irish Int. Airlines, 436 F2d 42; Block v Compagnie Nationale Air France, 386 F2d 323, cert den 392 US 905).
*481 Subdivision (1) of article 4 of the Warsaw Convention (49 US Stat 3015) states: "For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.” Impliedly then, baggage falls into two categories, that which remains under the control of the passenger (unchecked baggage) and that which is placed in the custody of the carrier (checked baggage). Article 4 also describes the necessary elements of the baggage check and the liability of the carrier for issuance of a defective baggage check or for nonissuance of a baggage check.
When the stewardess took Mrs. Schedlmayer’s hand luggage, TIA assumed control over it. I make this finding because the flight attendant took the bag and claimant could not retrieve it at will during the flight and could only get it back when she arrived at her ultimate destination (cf. Murphy v Eastern Greyhound Lines, 235 App Div 109). The fact that no check was issued does not alter the status of the hand luggage as checked baggage because the Warsaw Convention, by its very terms, makes provision for such a situation (see Warsaw Convention, art 4, subd [4], 49 US Stat 3015).
While the convention contains no provision enumerating or limiting items acceptable as baggage, defendant’s tariff, on file with the Civil Aeronautics Board (hereinafter CAB), contains two such provisions. Rule 40(B) of the tariff states that "TIA will accept for transportation as baggage only such personal property as necessary or appropriate for the wear, use, comfort, or convenience of the passenger for the purpose of his trip”. This provision is limited by Rule 42(B) of the TIA tariff, which purports to deny any responsibility for the "loss of, damage to or delay in the delivery of * * * money”.[3]
This latter rule relieves the carrier of liability beyond the extent permissible by the Warsaw Convention and is therefore unenforceable (see Warsaw Convention, art 23; 49 US Stat 3020; see, also, Cohen v Varig Airlines, S. A., 62 AD2d 324). Indeed, the CAB recently addressed this same conflict and ruled that the tariff could not be applied to flights covered by *482 the convention (Trans Int. Airlines, Docket 28807, Order 77-8-116).[4] Thus the loss of cash is not per se noncompensable, and I find that the sum carried in claimant’s hand luggage— approximately $1,300 — was a reasonable amount to take on a visit of over two months’ duration to the United States and was therefore "appropriate for * * * [claimant’s] use * * * [and] convenience * * * for the purpose of [the] trip.”
A carrier is presumptively liable for damage or loss to checked baggage (Cohen v Varig Airlines, S. A., 85 Misc 2d 653, affd as mod 62 AD2d 324). This presumption is based on article 18 of the convention (49 US Stat 3019), which provides:
"(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.
"(2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.”
The presumption created by article 18 (49 US Stat 3019) may be rebutted if the carrier demonstrates that it took reasonable precautions or that the claimant was guilty of contributory negligence. Article 20 (49 US Stat 3019) of the Warsaw Convention provides, in relevant part, that "[t]he carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures.” "Necessary measures” has been interpreted to mean "reasonable measures” (see Manufacturers Hanover Trust Co. v Alitalia-Linee Aeree Italiane, S.p.A., 429 F Supp 964, affd 573 F2d 1292). Defendant TIA made no effort at the trial to prove such measures were taken to prevent the loss of the money. Although TIA introduced testimony that a careful search was made for the currency after claimant reported it missing, that evidence does not relate to the care defendant *483 may have taken to prevent the loss from occurring in the first instance.
TIA did attempt to prove that plaintiff was contributorily negligent. Article 21 of the convention (49 US Stat 3019) provides: If the carrier proves that the damage was caused by or contributed to by the negligence of the injured person the court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability.
The issue of claimant’s contributory negligence is therefore governed by the laws of this jurisdiction, including New York’s law on the conflict of laws (see 8 NY Jur, Conflict of Laws, § 1; 15A CJS, Conflict of Laws, § 2; cf. Hutchison v Ross, 262 NY 381, 389, mot for rearg den 262 NY 643). With respect to the jurisprudence of other countries, CPLR 4511 (subd [b]) allows me to overlook relevant foreign law where, as here, defendant has not requested that I take judicial notice of that law. In the light of the discretion permitted me by CPLR 4511 and the further fact that the "grouping of contacts” theory (Babcock v Jackson, 12 NY2d 473, 479) warrants the application of substantive New York law in this instance, the law of this State will control on the issue of claimant’s contributory negligence.
Negligence of the bailor which contributes to the loss of a bailed item will generally exonerate the bailee (Osborn v Cline, 263 NY 434). The burden of proving such contributory negligence is upon the defendant (CPLR 1412). TIA contends that by leaving money in her carry-on luggage and in failing to inform the stewardess of the bag’s contents, claimant was contributorily negligent.[5]
I find that claimant was not contributorily negligent. A passenger is normally required to exercise reasonable care (Morrison v New York R. T. Corp., 257 App Div 1000, revd on other grounds 282 NY 773). If Mrs. Schedlmayer had checked her baggage in the conventional manner at the airport, she would not have been obligated to remove the cash from her bag merely because it was a valuable. Cash was an item "appropriate for * * * [claimant’s] use * * * [and] convenience * * * for the purpose of [the] trip” and liability for its loss would have ensued, subject to any applicable limitation of *484 liability provisions (see Warsaw Convention, art 4, 49 US Stat 3015; art 22, subd [2], 49 US Stat 3019). The distinction in this case is that when claimant turned her bag over to the stewardess, she did not expect it to be checked at all. She reasonably believed that her bag would be placed in the front room of the plane, which she could observe from her seat, and that she could retrieve it at any time. If that had been the fact, TIA would not have incurred custodial liability (see Murphy v Eastern Greyhound Lines, 235 App Div 109, supra). There was nothing that claimant could or should have done to minimize her loss in this instance. Mrs. Schedlmayer’s ability to control the bag was removed from her without her knowledge or consent.
The remaining issue[6] is whether claimant’s right to recover is limited by any other provision of law. Article 22 of the Warsaw Convention contains two provisions which limit a carrier’s liability. With respect to checked baggage, a passenger may recover up to $20 per kilogram (Cohen v Varig Airlines, 62 AD2d 324, 333, supra; Warsaw Convention, art 22, subd [2], 49 US Stat 3019). "[OJbjects of which the passenger takes charge himself’ are compensable to the extent of $400 (Warsaw Convention, art 22, subd [3], 49 US Stat 3019).
Although claimant’s hand luggage was checked baggage, no claim check was issued. Subdivision (4) of article 4 of the convention (49 US Stat 3015) provides that "if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain [certain required information], the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.” TIA therefore may not avail itself of the limitations imposed by article 22 of the convention (49 US Stat 3019) and is liable for the full amount sought in this action (see Lisi v Alitalia-Linee Aeree Italiane, S.p.A., 370 F2d 508, affd 390 US 455).

. Officially known as the Convention for Unification of Certain Rules Relating to International Transportation by Air, signed at Warsaw, Poland, on October 12, 1929 (49 US Stat 3000 et seq.), the Warsaw Convention will hereinafter be referred to and cited as the convention or the Warsaw Convention.

. Subdivision (2) of article 1 (49 US Stat 3014) provides in relevant part that "the expression 'international transportation’ shall mean any transportation in which * * * the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.”

. That paragraph provides in full as follows: "TIA shall not be liable to charterers or other persons by reason of loss of, damage to or delay in the delivery of fragile or perishable articles, wigs, wig boxes, liquor, money, jewelry, silverware, musical instruments, negotiable papers, securities, business documents, samples, paintings, antiques, artifacts, manuscripts, irreplaceable books or publications, cameras, watches or other such valuable articles.”

. According to CAB Order 77-8-116 (Trans Int. Airlines, Docket 28807, p 5, n 8, supra), Rule 5(E) of TIA’s tariff actually states that no portion of the tariff shall modify or waive any provision of the Warsaw Convention. However, the certified but apparently incomplete copy of defendant’s tariff submitted by TIA at trial does not include that provision.

. Defendant’s posttrial memorandum raises additional points, including whether claimant’s bag had a lock. Inasmuch as TIA did not question claimant on these points at trial, I will not consider them. Additionally, TIA has never argued that the money may have disappeared while the baggage was still unchecked.

. Because neither TIA’s tariff nor the Warsaw Convention exempts defendant from liability in this action, I do not reach the issue whether there was a possible conversion by TIA when it unilaterally checked Mrs. Schedlmayer’s hand luggage.