**Paul L. HEXTER and Helen H. Hexter, Plaintiffs,**

v.

**AIR FRANCE, Admiral Insurance Co., Jersey International, Inc., Gibson-McGrath & Co., Bolton & Company, Defendants.**

**No. 81 Civ. 3746(RWS).**

United States District Court, S.D. New York.

Dec. 20, 1982.

---

Gwertzman, Pfeffer, Toker & Lefkowitz, New York City, for defendant Admiral Ins. Co.; Milton B. Pfeffer, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendant Gibson-McGrath & Co.

## OPINION

SWEET, District Judge.

Defendant Compagnie Nationale Air France ("Air France") moves pursuant to Fed.R.Civ.P. 56 for partial summary judgment limiting its liability in this action to $400.00 pursuant to Article 22 of the Warsaw Convention.[1]  Plaintiffs Paul L. Hexter and Helen H. Hexter, husband and wife ("the Hexters"), claim that certain jewelry with an estimated value of $123,200 was stolen from a suitcase during a flight on the Concorde due to Air France's negligence. They resist summary judgment on the grounds that there are material issues of fact and that summary judgment is inappropriate here as a matter of law.  For the reasons stated below, the motion for partial summary judgment in favor of Air France will be denied.

*Background*

This lawsuit arises from an occurrence that frequently confronts, and occasionally confounds, air travelers and on at least two occasions, judges, this being the second.  On October 6, 1980, the Hexters boarded the Concorde· in Paris for Flight 001 to New York.  They carried with them an overnight bag that contained the jewelry in question.  All their other baggage was checked prior to boarding.  At some point during the flight, the bag was given over to a flight attendant.  The attendant placed it in a closet to the rear of the seats occupied by the Hexters.  The bag was returned to the Hexters at the termination of the flight.  The Hexters carried the bag off the plane and took a taxi to a hotel in New York City where while unpacking they discovered that the jewelry was missing.

Patterson, Belknap, Webb & Tyler, New York City, for plaintiffs; Mark R. Hellerer, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant Air France; Peter Hoenig, R. Scott Garley, New York City, of counsel.

1. The Warsaw Convention's official title is "Convention for Unification of Certain Rules Relating to International Transportation by Air."  It is reprinted at 49 U.S.C.A. § 1502 note.  For general background on the Conven-

tion *see* Lowenfeld & Mendelsohn, *The United States and the Warsaw Convention,* 80 Harv.L. Rev. 497 (1967); N. Matte, *Treatise on Air- Aeronautical Law* 377–496 (1981).

The foregoing facts are undisputed for the purposes of this motion. On the basis of these facts Air France seeks summary judgment limiting its liability pursuant to the Warsaw Convention. The Hexters oppose the granting of the motion as a matter of law, and on the grounds that there are material issues of fact as to whether the Hexters maintained "access" to their bag during the flight. To address these questions, an understanding of the liability limitations of the Warsaw Convention is required.[2]

*The Warsaw Convention*

Article 22 of the Convention provides for limitations on the carrier's liability in the transportation of passengers and baggage.[3] Subsection (1) limits the carrier's liability for damages to passengers to 125,000 francs each. Subsections (2) and (3) limit the liability for checked baggage and for objects of which the passenger takes charge as follows:

(2) In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that that sum is greater than the actual value to the consignor at delivery.

(3) As regards objects of which the passenger takes charge himself the liability of the carrier shall be limited to 5,000 francs per passenger.

In addition, Article 4 of the Convention specifies the requirements for the baggage check, and reads in full:

Article 4

(1) For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.

(2) The baggage check shall be made out in duplicate, one part for the passenger and the other part for the carrier.

(3) The baggage check shall contain the following particulars:

(a) The place and date of issue;

(b) The place of departure and of destination;

(c) The name and address of the carrier or carriers;

(d) The number of the passenger ticket;

(e) A statement that delivery of the baggage will be made to the bearer of the baggage check;

(f) The number and weight of the packages;

(g) The amount of the value declared in accordance with article 22(2);

(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

(4) The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

Thus, there are two types of baggage under the Convention: baggage accepted by the carrier (Art. 4(4)), for which a bag-

---

2. It is agreed that the Hexters' claim is governed by the Convention as arising out of "international transportation" within the meaning of Article 1. The Hexters have withdrawn their contention that their tickets did not contain the notice provision required by Art. 3(1)(e) of the Convention.

3. For background on the Convention's liability limitations *see Reed v. Wiser*, 555 F.2d 1079 (2d Cir.), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977).

gage check must be issued in order to preserve the liability limitation of Art. 22(2); and "objects of which the passenger takes charge himself" (Arts. 4(1) & 22(3)). According to the Hexters the overnight bag was "accepted" by Air France when the flight attendant placed it in the closet with the consequence that it was no longer in their "charge," and that Air France's failure to deliver a baggage check for the bag makes the Art. 22 liability limitations inapplicable here. In addition, they assert unresolved issues of fact regarding the question of access to the bag that make summary judgment inappropriate.

Air France maintains that any baggage that the passenger chooses not to deliver to the carrier in exchange for a baggage check prior to boarding the flight constitutes "objects of which the passenger takes charge himself," regardless of the disposition of the baggage during the flight, and that therefore it is entitled to partial summary judgment limiting its liability.

*Discussion*

Each of the parties' contentions are plausible as a matter of interpretation of the Convention. The problem is compounded by the dearth of authority construing "objects of which the passenger takes charge himself." Counsel and this court have found only one case dealing with this situation, a surprising circumstance given the frequency with which Article 22 in general has been litigated. *See* N. Matte, *Treatise on Air-Aeronautical Law* 418 (1981); S. Speiser & C. Krause, *Aviation Tort Law* § 11:36 at 760 (1978).

The facts of that case, *Schedlmayer v. Trans Int'l Airlines,* 99 Misc.2d 478, 416 N.Y.S.2d 461 (N.Y.C.Civ.Ct.1979), are similar to those here. The plaintiff, Mrs. Schedlmayer, boarded a flight bound for New York in Austria, carrying with her a piece of hand luggage, which a stewardess subsequently placed in a compartment in the front of the airplane. During the flight Mrs. Schedlmayer was informed that she could not retrieve her bag until she claimed her baggage at Kennedy Airport in New York, and that the bag was unavailable and must have been stored in the belly of the aircraft. When Mrs. Schedlmayer retrieved her luggage upon arrival in New York, she discovered that the cash formerly inside the bag was missing.

The court interpreted Art. 4(1) as implying that "baggage falls into two categories, that which remains under the control of the passenger (unchecked baggage) and that which is placed in the custody of the carrier (checked baggage)." 99 Misc.2d at 481, 416 N.Y.S. at 463. The court concluded that when the stewardess took Mrs. Schedlmayer's hand luggage, the airline "assumed control over it," because Mrs. Schedlmayer "could not retrieve it at will during the flight and could only get it back when she arrived at her ultimate destination." *Id.*

This court interprets the Convention similarly. The issue is not, however, whether the bag "remains under the control of the passenger," as the *Schedlmayer* court phrased it. This language is not found in the Convention. Rather, the issue involves interpretation of the interplay between Art. 4(4) and ARt. 22(3): Is liability unlimited when, after boarding, the carrier "accepts baggage without a baggage check having been delivered" (Art. 4(4)), where the baggage constitutes an object of "which the passenger [has] take[n] charge himself" (Art. 22(3)) by deciding not to check the baggage prior to boarding?

Air France argues that the question is really one of timing. It claims that the provision of Art. 4(4) eliminating limited liability for baggage "accepted" without a baggage check applies only to baggage accepted prior to boarding. The argument is, in effect, that once the passenger "takes charge himself" of his baggage by boarding the plane with it, the liability limitations apply, no matter what subsequently transpires, even, apparently, if an employee of the airline removes the baggage without the passenger's consent. Air France's sole support for this proposition is a passage to the same effect from H. Drion, *Limitation of Liabilities in International Air Law,* 303–04 (1954), which asserts that baggage "accepted" on board an aircraft is accepted for

storage and not for carriage and that therefore the liability limitations apply.

 However, the distinction is nowhere to be found in the Convention. The Convention speaks only of acceptance, not of the purpose of acceptance. In addition, the Convention does distinguish "objects of which the passenger takes charge himself" from checked baggage. It follows that, when the airline by its unilateral act removes baggage from the passenger's charge, the airline thereby accepts the baggage within the meaning of Art. 4(4), and must issue a baggage check to preserve its right to limited liability.

The airline can, of course, take steps to ensure that limited liability is preserved. It can screen passengers prior to boarding and insist that baggage be checked if it might for one reason or another have to be removed from the passenger's charge. Alternatively, it can devise a system for issuing baggage checks on board the aircraft. While the check would have to contain the weight of the baggage, see Arts. 4(3)(f) & 4(4), this would not be an onerous task. Thus, the interpretation adopted here, since it enables the airline to protect itself from unlimited liability, is consistent with the Convention's purpose of fixing the airlines' costs from damages at a definite level. *See Reed v. Wiser,* 555 F.2d 1079, 1089 (2d Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977).

 Therefore, the factual issue presented is whether the action of the airline, by its flight attendant taking the Hexters' overnight bag, constituted acceptance of the bag by the airline, such that it was removed from the Hexters' charge. The facts surrounding the taking of the bag and its subsequent disposition during the flight are disputed. In particular, Air France claims that the Hexters retained access to their bag during the entire flight, while the Hexters maintain that the question of access is unresolved. This dispute is not capable of resolution from the affidavits submitted for the purposes of this motion. Accordingly, the motion for summary judgment will be denied, and this action will proceed to trial. The parties are directed to complete discovery by February 7 and submit a pretrial order by February 14, 1983.

IT IS SO ORDERED.