ELISABETH W. GOEPP, Individually and as Administratrix of the Estate of RUDOLPH M. GOEPP, JR., Deceased, Respondent, *v.* AMERICAN OVERSEAS AIRLINES, INC., Appellant.

First Department, December 16, 1952.

*William J. Junkerman* of counsel (*Douglas B. Bowring* and *James B. McQuillan* with him on the brief; *Haight, Deming, Gardner, Poor & Havens,* attorneys), for appellant.

*H. G. Pickering* of counsel (*J. B. Breckenridge* with him on the brief; *Mudge, Stern, Williams & Tucker,* attorneys), for respondent.

COHN, J. This action was brought to recover damages for the death of a passenger as the result of a crash of a DC-4 airplane, owned by defendant on October 3, 1946, shortly after take-off from Harmon Field, Stephenville, Newfoundland.

The fatal flight is conceded to have been international air transportation within the terms of the Warsaw Convention. On October 29, 1934, the President of the United States proclaimed adherence to this treaty and it became part of the law of the land (*United States* v. *Belmont,* 301 U. S. 324). Disposition of this action is accordingly determined with reference to the terms of the treaty. (*Wyman* v. *Pan American Airways,* 181 Misc. 963, affd. 267 App. Div. 947, affd. 293 N. Y. 878, certiorari denied 324 U. S. 882; *Ross* v. *Pan American Airways,* 299 N. Y. 88).

Under article 17 of the treaty (49 U. S. Stat. 3018), a carrier is presumptively liable " in the event of the death or wounding of a passenger   *   *   *   if the accident which caused the damage so sustained took place on board the aircraft ". Article 20 states that the carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures. Subdivision (1) of article 22 limits that liability to 125,000 francs, which as of the year 1934 is the equivalent of approximately $8,300 in United States money. However, by special contract, the carrier and the passenger may agree to a higher limit of liability. Article 25 provides that the carrier shall not be entitled to limit his liability " if the damage is caused by his wilful misconduct or by such default on his part, as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct." (49 U. S. Stat. 3020.)

Plaintiff charged that the defendant had violated certain safety regulations of the United States Civil Aeronautics Board. A jury to whom the case was submitted found the defendant carrier guilty of wilful misconduct in that it had violated the regulations as claimed by plaintiff. Damages were awarded

to plaintiff in the amount of $65,000, as a corollary to a finding of violation of the regulations constituting wilful misconduct.

Defendant upon this appeal does not question plaintiff's right to recover $8,300 under the Warsaw Convention. It does contest the judgment and verdict insofar as a sum in excess of $8,300 is awarded. Defendant urges (1) that there were no violations of the pertinent regulations; (2) that, assuming a violation, it was not the proximate cause of the tragedy; and (3) that no wilful misconduct on defendant carrier's part was shown or proved.

Decedent boarded the ill-fated airplane on October 2, 1946, to be transported from La Guardia Airport, New York, to Frankfort, Germany, via Gander, Newfoundland and Shannon, Ireland. Foul weather conditions prevailing at Gander caused a diversion of the flight to Harmon Field, at Stephenville, about 167 miles from Gander. At that time Harmon Field was operated by the United States Army Air Force. A landing there was accomplished that afternoon in clear weather.

While at Harmon Field, the airplane was serviced, inspected and refueled. In the early morning of October 3d, and while it was still dark, the tower operator instructed the pilot, Westerfield, to take off from runway 7. After the airplane was airborne, it flew 2½ or 3 minutes for a distance of 7.1 miles, at which point it crashed against a 1,200 foot hill at the 1,160 foot mark. There were no lights or marker beacons on the hill. All aboard the airplane perished.

Plaintiff does not challenge the technical competence of Captain Westerfield, the first pilot of the airplane. As a wartime pilot he had flown across the Atlantic Ocean many times. He had landed at and taken off from Gander on at least one occasion and from Stephenville (Harmon Field) many times.

Plaintiff does claim that defendant violated subdivisions (b) and (c) of section 41.3020 of the Civil Air Regulations (Code Fed. Reg., § 41.50, subds. [b], [c]) in effect on the date of the accident. They read:

" (b) A first pilot who has served as such on any route or routes for at least 1,000 hours, in order to qualify for any other route, shall have made, within the preceding 12 calendar months, 2 one-way trips as pilot without passengers or as copilot with or without passengers. One of the above trips must have been completed within the preceding 60 days, and the pilot qualifying must have been accompanied on this trip by a check pilot.

" (c) In complying with the requirements of paragraphs (a) and (b), the qualifying pilot shall have performed in flight,

under actual or simulated instrument conditions, all of the approved instrument approach procedures at each regular, provisional, and refueling and holding airport approved for the route. In the case of airports used only as alternates, the pilot may demonstrate his ability by other means approved by the Administrator.''

It is plaintiff's contention that Captain Westerfield, as required by subdivision (b) of section 41.3020, did not make two one-way flights on the routes from New York to Gander within twelve months prior to June 27, 1946, the date he was certified by defendant as qualified to serve as first pilot in its commercial operation. Plaintiff also claims a violation of that portion of the particular regulation which directs that one of the two required round trips must be made, in the company of a check pilot, within sixty days prior to the certification date. Plaintiff likewise claims a third violation of the regulations in that Westerfield had not, as required by subdivision (c) of section 41.3020, performed the approved instrument approach procedures at Stephenville which plaintiff claims was a '' refueling '' airport.

Defendant, on the other hand, contends that subdivision (b) of section 41.3020 of the regulations was not violated but that Westerfield was an accomplished pilot who had duly qualified and served as a pilot over the '' North Atlantic Route ''. There was evidence that Westerfield had made numerous trans-Atlantic crossings as a pilot in defendant's employ both prior to and after his certification as a first pilot in the passenger operation. There was evidence, too, that Westerfield's qualifications to fly the North Atlantic route had been established to the satisfaction of those charged both by defendant and the Civil Aeronautics Administration with the duty of determining that fact.

The difference between plaintiff and defendant in this regard is that plaintiff insists upon a strict construction of a '' route '' as including all the stops incorporated in any projected flight, so that a pilot could not be said to be qualified for that flight unless within the specified period before qualifying he had made the requisite number of flights making these precise stops. Defendant argues that the North Atlantic route is variable, containing choices of stops depending upon conditions, and that qualification can be made for any North Atlantic route by having made the necessary trips over any of the routes. Certain it is that Westerfield had made sufficient crossings over the North Atlantic routes to qualify within defendant's view of the regulations and, although he had made only one trip in and out of

Gander in the twelve months prior to qualification, he had made subsequent trips in and out of Gander prior to the accident. However the regulations are construed in this particular, it is abundantly clear that any failure to make two flights to Gander before qualification bore no proximate causal relation to an accident which occurred 167 miles away.

Relative to plaintiff's claim that subdivision (c) of section 41.3020 of the Civil Air Regulations was violated by defendant in that Westerfield was not called upon or required to perform the approved instrument approach procedures at Stephenville, we are of the view that this claim has little merit. The evidence in the case establishes that defendant had, at all times, used Stephenville only as an alternate airport and not as a refueling airport. Moreover, defendant's flight clearance sheet for the trip from New York to Gander on October 2, 1946, listed Stephenville as an " alternate " for Gander. Stephenville, as far as defendant was concerned, was thus within the purport and intent of section 41.99 of Part 41 of the Civil Air Regulations (Code Fed. Reg., § 41.137, subd. [f]): " f. Alternate Airport. An alternate airport is one listed in the clearance as a point to which a flight may be directed if, subsequent to departure, a landing at the point to which the flight is cleared becomes undesirable."

Unfavorable weather conditions at Gander necessitated the use of Stephenville, on the ill-fated flight, as an alternate landing field. Although approved as both an alternate and a refueling airport, the issue under the regulations was whether Stephenville *was used* by defendant, in its operations, solely as an alternate. If it was, and the evidence so indicates, Westerfield was not required to perform the instrument approach procedures since subdivision (c) of section 41.3020 provides (Code Fed. Reg., § 41.50, subd. [c]): " In the case of airports used only as alternates, the pilot may demonstrate his ability by other means approved by the Administrator."

Inasmuch as the pertinent evidence indicated a use of Stephenville only as an alternate airport, all that was required was that the pilot should have demonstrated his ability to land and take off at Stephenville to the satisfaction of the administrator. This he had amply done by a check flight and by virtue of long prior experience in landing at and taking off from Stephenville. We think that there was no basis for a finding by the jury of alleged misconduct by defendant in connection therewith.

The record here discloses nothing upon which to justify (1) a holding of wilful misconduct on defendant's part in certifying

Westerfield as a first pilot or (2) any causal connection between the accident and any possible violation of regulations. As we have pointed out, the only regulation concerning which we can find a question of interpretation which could afford any ground for arguing that a violation had been committed is subdivision (b) of section 41.3020, and as to any such violation there could not be any possible causal connection with the accident. Subdivision (c) of section 41.3020 of the regulation we have found not to have been violated so there can be no question of causation with respect thereto.

As to the asserted violations, even if the pertinent regulations were susceptible of varying interpretations, and defendant's version thereof were incorrect, there is no proof that defendant's interpretation was conceived in bad faith, that it was arrived at with any intimation that it was incorrect, or that it was arrived at, or effectuated, in a disregard of the possible consequences of an erroneous interpretation. These would be necessary elements to establish wilful misconduct. Wilful misconduct, as the trial court correctly charged, depends upon the facts of a particular case, but in order that an act may be characterized as wilful there must be on the part of the person or persons sought to be charged, a conscious intent to do or to omit doing the act from which harm results to another, or an intentional omission of a manifest duty. There must be a realization of the probability of injury from the conduct, and a disregard of the probable consequences of such conduct. The burden of establishing wilful misconduct rests upon plaintiff. (*Ulen* v. *American Air Lines*, [1948] U. S. Av. Rep. 161, affd. *sub nom. American Airlines* v. *Ulen*, 186 F. 2d 529, 533; *Ritts* v. *American Overseas Airlines*, [1949] U. S. Av. Rep. 65; *Pekelis* v. *Transcontinental & Western Air*, [1950] U. S. Av. Rep. 296, revd. on other grounds 187 F. 2d 122, certiorari denied 341 U. S. 951; 65 C. J. S., Negligence, § 9.)

In their excellent treatise on Air Law, Shawcross and Beaumont ([2d ed.], p. 345) state the meaning of the term wilful misconduct as related to the text of the Warsaw Convention as follows: " The effect of the English authorities appears to be that, in English Law, ' wilful misconduct ' means a deliberate act or omission which the person doing or omitting — (i) knows is a breach of his duty in the circumstances; or (ii) knows is likely to cause damage to third parties; or (iii) with reckless indifference does not know or care whether it is or is not a breach of his duty or is likely to cause damage. * * * It is essential to remember that ' the *mis*conduct, not the con-

duct, must be wilful ' * * *. Thus, if a pilot gives the ground control a wrong indication of his position, it may be negligent, and in one sense wilful (in that the pilot intends to give *an* indication of his position), but it is not wilful misconduct unless he knows he is giving a *wrong* indication. But if a pilot deliberately disregarded the directions of ground control (for example, by landing when told that visibility was nil, or that the runway was unserviceable), or deliberately did or omitted something in breach of Regulations, or of generally recognized standards of reasonable care (such as taking-off with a load which he knew substantially exceeds the permissible weight), he would normally be guilty of wilful misconduct. It is, however, submitted that this question is one of fact in each particular case * * *."

Upon the record in this case, there was no evidence submitted to show that asserted violations of air safety regulations were the proximate cause of the accident, or that defendant was guilty of any wilful misconduct within the purview of the provisions of the Warsaw Convention. The trial court should have granted defendant's motion to dismiss plaintiff's complaint insofar as there was any claim of liability in excess of $8,300.

The judgment in plaintiff's favor in the sum of $66,005.49 should be modified and a judgment directed in plaintiff's favor in the sum of $8,300, without costs.

BREITEL, J. (dissenting). I dissent on the ground that the issues of fact were properly determined by the jury. The meaning and effect of the regulations was a mixed question of fact and law because of the usages and practices involved. Moreover, both sides tried the case on that theory, and there was no exception to the court's charge in submitting those issues to the jury. The jury could properly find that defendant's acts and omissions were " wilful misconduct " within the meaning of the Warsaw Convention, it being sufficient that they find that defendant's acts or omissions were deliberately done or omitted as acts or omissions, in violation of the regulated standards of care. (Shawcross and Beaumont on Air Law [2d ed.], pp. 344–347, and authorities cited.) On the matter of proximate cause it was quite reasonable for the jury to find that the pilot's substandard familiarity with an instrument landing on the field at Stephenville involved of necessity a relatively substandard familiarity with the terrain, resulting in the pilot's ignorance of the hill which, on take-off, the plane struck. This, the jury could have

found was a proximate cause of the accident. It should be obvious too that with respect to air accidents, because of the mysteries in which the fatal and more serious accidents become shrouded, a liberal approach in finding proximate cause from any kind of misconduct which may lead to multiple fatalities is socially justified, if not required. What may be required as evidence of proximate cause in a trolley car accident would not be a relevant standard in an accident involving a modern transport plane, or the jet liner now at the threshold of air transportation. The risks of air transportation are great and are assumed by the passenger; but he should have the right to rely on the carrier's adherence to officially required standard of care. (See Shawcross and Beaumont on Air Law [2d ed.], pp. 316–319.)

The judgment should be affirmed.

PECK, P. J., and CALLAHAN, J., concur with COHN, J.; BREITEL, J., dissents and votes to affirm, in opinion; DORE, J., dissents and votes to affirm on the ground that the claimed " willful misconduct " was an issue of fact for the jury, as well as the negligence.

Judgment modified by reducing the amount thereof to $8,300 and judgment is directed to be entered in plaintiff's favor in the said sum of $8,300, without costs.

Settle order on notice.