INTERNATIONAL MINING CORPORATION et al., Respondents, v AEROVIAS NACIONALES DE COLOMBIA S.A. et al., Appellants.

First Department, April 14, 1977

*John L. Conners* of counsel (*Paul H. Murphy* with him on the brief; *Bigham, Englar, Jones & Houston,* attorneys), for appellants.

*Stanely W. Zawacki* of counsel *(Vincent, Berg, Russo, Marcigliano & Zawacki,* attorneys), for respondents.

CAPOZZOLI, J. Defendants, air carriers, agreed to transport two boxes "said to contain platinum" from Colombia, S. A., to Kennedy Airport. It is agreed that the defendant, Aerovias, the carrier which transported the boxes to Kennedy, did not inspect the boxes and, therefore, had no actual knowledge of their contents. The contents of the boxes were declared to have a value of $181,200 for customs purposes and valued accordingly on the face of the air bill.

Under the governing section (2) of article 22 of the Warsaw Convention (49 US Stat 3014, 3019), in order to avoid a limitation of liability in favor of the carrier, the shipper may make a special declaration of the value of the shipment by paying an additional tariff. Accordingly, the plaintiffs in this case made a special declaration of the value of the boxes as $30,300 and paid an additional tariff of $60.60. On arrival at Kennedy the shipment was turned over by Aerovias to defendant-appellant, Pan American World Airways, which was the cargo handler for Aerovias. Pan American placed the shipment in its valuables room, or cage, located in an area of cargo building 67, occupied by Pan American. It was a steel reinforced cement-block room, under lock and key, and attended at all times by a guard stationed inside. Only authorized members of Pan American cargo management staff were permitted entry. A log book was also maintained and entries were made therein when and by whom a valuable shipment would be checked in and when it was taken out. All involved had to sign the entries, including the guard.

On June 25, 1969 a man appeared at Pan Am's delivery dock at the cargo building and introduced himself as John Russo. He presented a carrier's certificate purported to have been signed by one of Pan American's cargo agents, one, S. Alexander. In the space provided therefor there was a United States customs release stamp. Robert Saunders, the cargo supervisor, examined the certificate. Treating it as genuine, he obtained the driver's license from Russo and noted his name and license number in the identification box on the certificate. Saunders obtained the shipment from the valuables cage, signed it out on the log and turned it over to Robert Rubenstein, a Pan American cargo representative, who in turn had Russo sign the receipt portion of the carrier certificate and delivered the shipment to him. Russo was an imposter and

thief, who secured possession of the shipment on what turned out to be a forged Pan American carrier certificate.

The defendants have conceded negligence and have offered to pay to the plaintiffs, as damages, the sum of $30,300, which was the declared value of the shipment. The plaintiffs have refused to accept this amount, claiming that the actions of the defendants constituted more than ordinary negligence and, in fact, insist that they were guilty of willful misconduct. The plaintiffs have brought this action seeking the full damages in the sum of $186,536, representing what is claimed to be the true value of the shipment involved. Accordingly, their complaint sets forth not only a cause of action based on negligence, but also a cause of action for willful misconduct. Obviously, if the plaintiffs succeed in establishing their cause of action based on willful misconduct, they would avoid the limitation of liability in favor of the defendants, so that the damages would not be limited to $30,300.

The Warsaw Convention is an international air treaty to which both the United States and Colombia are parties. It supersedes State law and policy. (Wyman v Pan Amer. Airways, 181 Misc 963, affd 267 App Div 947, affd 293 NY 878, cert den 324 US 882; Garcia v Pan Amer. Airways, 269 App Div 287, affd 295 NY 852, cert den 329 US 741.) Hence its provisions control the rights of the parties.

Article 25 of the Warsaw Convention states: "(1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct."

It should be noted that, during trial, the following stipulation was entered into between the parties: "It is hereby stipulated by the plaintiff that the action of defendants' two employees, Robert J. Saunders and Robert Rubenstein, on June 25, 1965, in delivering two packages, numbered 862 and 863, to one, Russo, an admitted imposter, was not of itself and standing alone an act of wilful misconduct within the meaning of the Warsaw Convention, as applied to this case." The plaintiffs argue that there were additional facts, other than those set forth in the aforesaid stipulation, which were sufficient to send this case to the jury on the issue of willful

misconduct. Since the jury found willful misconduct on the part of the defendants the plaintiffs further argue that this court should not interfere with that result. The additional facts upon which the plaintiffs rely consist of certain occurrences which took place prior to the loss suffered in this case. They call attention to the fact that, on a prior occasion, a shipment of platinum, valued at $250,000, was shipped to New York via Avianca and Pan American, but it was misdelivered by Pan American, although it was traced and returned to the plaintiff. An exchange of letters followed between the plaintiffs and Pan American as the result of which the latter assured the former that certain precautions had been taken which would insure proper delivery in the future. The plaintiffs further argue that the security at Kennedy and at Pan American was in a deplorable state, referring to a report of the Attorney General of the United States, but which was not before the jury during the trial. Also the reference by plaintiffs in their brief to the Airport Security Council, which had been formed in the summer of 1968, was not before the jury and not part of the record. The defendants argue that the manner in which this theft occurred was unusual and extraordinary. They point to the fact that the loss occurred only because of the forgery of an official document, an unusual and rare occurrence. In reply the plaintiffs contend that a simple telephone call to the offices of the plaintiffs might well have prevented the loss. Hence, the question presented is whether, on the facts demonstrated at the trial, there was sufficient to submit the case to the jury on the issue whether these defendants were guilty of willful misconduct.

In New York Jurisprudence (vol 41, Negligence, § 28) we find the following:

" 'Wilful negligence' has been defined as that degree of neglect arising where there is a reckless indifference to the safety of human life or an intentional failure to perform a manifest duty to the public, in the performance of which the public and the party injured have an interest".

" 'Recklessness' is more than want of ordinary negligence, more than want of ordinary care. It is a wanton or heedless indifference to consequences, an indifference whether wrong is done or not, indifference to the rights of others, although it does not necessarily mean that the act is done intentionally or purposely, and when used conjunctively with 'wantonly' it means heedlessness, carelessness, rashness, or indifference to

consequences, and always more than negligence, although it does not necessarily imply illegality."

This court, in the case of *Goepp v American Overseas Airlines* (281 App Div 105, 111-112) had occasion to construe the term "wilful misconduct", as contained in the Warsaw Convention, and said:

"Wilful misconduct * * * depends upon the facts of a particular case, but in order that an act may be characterized as wilful there must be on the part of the person or persons sought to be charged, a conscious intent to do or to omit doing the act from which harm results to another * * *. The burden of establishing wilful misconduct rests upon plaintiff. * * *

"In their excellent treatise on Air Law, Shawcross and Beaumont ([2d ed.], p. 345) state the meaning of the term wilful misconduct as related to the text of the Warsaw Convention as follows: 'The effect of the English authorities appears to be that, in English Law, "wilful misconduct" means a deliberate act or omission which the person doing or omitting—(i) knows is a breach of his duty in the circumstances; or (ii) knows is likely to cause damage to third parties; or (iii) with reckless indifference does not know or care whether it is or is not a breach of his duty or is likely to cause damage. * * * It is essential to remember that the *'mis* conduct, not the conduct, must be wilful' ".

The court held that the plaintiff had not sustained the burden of proving misconduct on the part of the defendant and limited recovery as provided in the treaty. The Court of Appeals affirmed in 305 NY 830 and certiorari was denied in 346 US 874.

In *Grey v American Airlines* (227 F2d 282, 285) the Court of Appeals, Second Circuit, approved a definition of willful misconduct as "a conscious intent to do or omit doing an act from which harm results to another, or an intentional omission of a manifest duty. There must be a realization of the probability of injury from the conduct, and a disregard of the probable consequences of such conduct."

In *Berner v British Commonwealth Pacific Airlines* (346 F2d 532, 536-537) the court quoted with approval from its earlier decision in *Pekelis v Transcontinental & Western Air* (187 F2d 122, 124) saying: " 'wilful misconduct *is the intentional performance of an act with knowledge that the performance of that act will probably result in injury or damage, or it* may be the intentional performance of an act in such a manner as

to imply reckless disregard of the probable consequences * * * [or] the intentional omission of some act, *with knowledge that such omission will probably result in damage or injury, or the intentional omission of some act* in a manner from which could be implied reckless disregard of the probable consequences of the omission' ".

In view of the authorities above cited and on the basis of the facts contained in the present record, we conclude that the plaintiffs did not sustain their burden of proving willful, misconduct.

Accordingly, the judgment entered in favor of plaintiffs on April 12, 1976, after trial before WALLACH, J., and a jury, should be modified, on the law, to the extent of reducing the verdict to $30,300 and, as so modified, the judgment should be affirmed, without costs.

SILVERMAN, J. (concurring). I see no need for us now to decide whether plaintiffs' damages would be limited to the declared amount if plaintiffs had established willful misconduct. Otherwise, I concur.

LUPIANO, J. P., and BIRNS, J., concur with CAPOZZOLI, J.; SILVERMAN, J., concurs in an opinion.

Judgment, Supreme Court, New York County, entered on April 12, 1976, unanimously modified, on the law, to the extent of reducing the verdict to $30,000 and, as so modified, affirmed, without costs and without disbursements.