**Jayne A. HITCHCOCK, Plaintiff,**

v.

**WOODSIDE LITERARY AGENCY, James Leonard, Susan Day, John Lawrence, Richard Bell, Ursula Sprachmann, and John Doe # 1 through John Doe # 10, the preceding ten names being fictitious, the persons or parties intended being the**

---

persons doing business as Woodside Literary Agency and/or James Leonard, Susan Day, John Lawrence, Richard Bell, or Ursula Sprachmann, and Richard Roe # 1 through Richard Roe # 10, the last preceding ten names being fictitious, the persons or parties intended being the persons acting in concert with the named defendants and/or defendants John Doe # 1 through John Doe # 10 in connection with the matters described in the complaint, Defendants.

No. 97 CV 166 (NG)(JA).

United States District Court, E.D. New York.

July 28, 1998.

John A. Young, New York City, for Plaintiff.

Stephen A. Weingrad, Weingrad & Weingrad, New York City, for Defendants.

## OPINION AND ORDER

GERSHON, District Judge.

The original complaint in this action was filed on January 13, 1997. In an opinion and order, dated November 14, 1997, upon the motion of defendants John Lawrence—who is appearing *pro se*, and who asserts that he appears on behalf of defendant Woodside Literary Agency as well—James Leonard and Ursula Sprachmann, I dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. I also afforded the plaintiff the opportunity to file an amended complaint that could withstand a Rule 12(b)(6) motion. The plaintiff having now filed an amended complaint, the same defendants have again moved to dismiss pursuant to Rule 12(b)(6). Leonard and Sprachmann also move for dismissal on the ground of insufficiency of service of process pursuant to Rule 12(b)(5). All three of the moving defendants also seek the imposition of sanctions pursuant to Rule 11.

## THE AMENDED COMPLAINT

The plaintiff, Jayne A. Hitchcock, is a citizen and resident of Maryland. ¶ 2.[1] Hitchcock alleges, upon information and belief, that Woodside Literary Agency ("WLA") is an enterprise that has not been organized under the laws of any state, but that its principal place of business is New York. ¶ 3. Woodside is alleged to be "owned, operated and directed principally by defendants James Leonard, John Lawrence and Ursula Sprachmann." ¶ 3. Each of these defendants is alleged to be a citizen of New York or Florida. ¶ 3.[2]

Hitchcock identifies herself as "a professional author and a Teaching Assistant at the University of Maryland." ¶ 6. In the course of her professional activities, as well as in her personal life, Hitchcock makes extensive use of the Internet. ¶¶ 7–8. Hitchcock alleges that the defendants also have made use of the Internet as a means to advertise the services of WLA. ¶ 9. These advertisements solicit writing samples from "published and unpublished authors." ¶ 9.

On a date that she does not specify, Hitchcock responded to one of these advertisements by sending a sample of her writing to WLA. ¶ 13. After a period of time that is

---

1. References to "¶__" are to paragraphs of the Amended Complaint, dated December 14, 1997.

2. No allegation is made concerning the residency of the two other named defendants, Susan Day and Richard Bell, and they have not answered either the original or amended complaints. Indeed, Hitchcock alleges that Day and Bell "may be fictitious individuals who exist only as alter egos" of Leonard, Lawrence or Sprachmann. ¶ 3. The ten "John Doe" defendants are alleged to be "person[s] not actually named 'James Leonard,' 'Susan Day,' 'John Lawrence,' 'Richard Bell' or 'Ursula Sprachmann' who does business under one or more of such names and/or the name 'Woodside Literary Agency.' " ¶ 3. The ten "Richard Roe" defendants are alleged to be persons "who conspired, cooperated, assisted, aided or abetted one or more" of the named defendants or the John Doe defendants. ¶ 3. Hitchcock declares that, "[u]pon ascertaining the true identities" of the Doe and Roe defendants, she will file an amended complaint that will identify them "more specifically." ¶ 3.

also not specified, Hitchcock received a letter from WLA that praised her writing and solicited her to forward a full manuscript to WLA, along with a $75 "reading and market evaluation fee." ¶ 13. Because she wanted "to be sure that said reply was not an isolated exception," Hitchcock sent a different sample of her writing to WLA using her maiden name. ¶ 14. WLA responded to this second sample by sending Hitchcock a letter that was "virtually identical" to the letter sent in response to the first writing sample, save for soliciting a $150 "reading and market evaluation fee." ¶ 14.

At this point, Hitchcock concluded that WLA is not a legitimate literary agency. That is, WLA is "not in the business of representing authors in business discussions and negotiations with potential publishers," but is instead nothing but a scam for soliciting bogus fees from potential authors. ¶¶ 15–17. Deciding to expose WLA, Hitchcock posted various notices on the Internet declaring that "normal and legitimate literary agencies did not charge 'reading fees' or other fees in advance of making a sale; but that Woodside did so." ¶ 18. Hitchcock alleges that the defendants retaliated by launching a campaign of harassment against her via the Internet. This harassment has taken many forms, including the posting of messages to the effect that Hitchcock is an author of pornography, the flooding of her e-mail accounts and the posting of offensive messages to third parties in such a manner as to make it appear that they were authored by Hitchcock. ¶¶ 21, 24, 26. Hitchcock also alleges that the defendants have made unspecified threats to have her "blacklisted" among publishers, ¶ 23, and, most seriously, that they have placed her "in danger of imminent sexual assault, of other bodily harm and of her very life" by posting Internet messages in her name containing crude sexual propositions. ¶ 25. As a result, Hitchcock alleges that she has suffered both personal and professional injury, necessitating therapy and considerable efforts to repair her business reputation. ¶ 32.

## DISCUSSION

In considering a motion to dismiss a complaint brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is "required to view all allegations raised in the complaint in the light most favorable to the non-moving party... and must accept as true all the factual allegations in the complaint." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (citation and quotation omitted). A complaint will be dismissed if it sets forth no factual basis upon which the plaintiff would be entitled to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In other words, in order to avoid dismissal, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Cohen v. Litt*, 906 F.Supp. 957, 962 (S.D.N.Y. 1995) (quotation omitted; emphasis in original).

### A. The RICO Claim.

The amended complaint alleges that the defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1861 *et seq.*, which is the only federal claim asserted by Hitchcock. To state a claim under the statute, a plaintiff must plead that the defendant violated RICO and that the plaintiff suffered injury as a result of such violation. 18 U.S.C. § 1964(c). Our Court of Appeals has directed that to satisfy the first prong of this statutory scheme, a plaintiff must allege

> that a defendant, "employed by or associated with" an enterprise affecting interstate or foreign commerce, conducted or participated in the conduct of this enterprise's affairs "through a pattern of racketeering activity."

*S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing* Corp., 84 F.3d 629, 633 (2d Cir.1996) (citing 18 U.S.C. § 1962(c); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984)). Hitchcock has not met this pleading standard because she has failed to properly plead the existence of a RICO enterprise.

Section 1962(c) provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The amended complaint alleges that WLA and Lawrence, Leonard and Sprachman constitute a RICO enterprise. ¶ 5.[3] These defendants, however, are all alleged to be owners and operators of WLA. ¶ 3. As a matter of law, then, they cannot form a RICO enterprise with WLA. As explained in *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir.1994), Section 1962(c) mandates a "distinctness requirement" in that "the [RICO] person and the [RICO] enterprise referred to must be distinct." The combination of a corporate entity and its officers and employees, however, does not fulfill the distinctness requirement. This is so because a corporate entity, in effect, *consists of the officers and employees who act in its name:*

> Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself. Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

*Id.* Thus, in *Riverwoods*, a bank and two of its loan officers could not form a RICO enterprise. *Id.* at 344–45; *see also Communication Opportunity Inc. v. Davis*, 1998 WL 240527 at *2 (E.D.N.Y. Apr.28, 1998) (corporation and its principal officer could not form enterprise). *Compare Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 262–65 (2d Cir.1995) (two "separate and distinct" corporations, along with individual who was officer of both, formed RICO enterprise),

*cert. denied*, 516 U.S. 1114, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996). Here, the amended complaint alleges nothing but that the individual defendants, as owners and operators of WLA, acted through WLA to cause harm to Hitchcock. This is not a RICO enterprise and Hitchcock's RICO claim is accordingly dismissed.

### B. Diversity Jurisdiction.

 The RICO claim is the only federal claim asserted in the amended complaint. Therefore, the dismissal of the RICO claim means eliminates federal question jurisdiction under 28 U.S.C. § 1331 over this action. Hitchcock, however asserts that jurisdiction may be exercised over the remaining common law claims pursuant to the diverse citizenship of the parties. 28 U.S.C. § 1332. This presents a problem. Diversity jurisdiction "require[s] complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (emphasis in original). In addition, complete diversity " 'should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record.' " *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir.1996) (quoting *Wolfe v. Hartford Life & Annuity Ins. Co.*, 148 U.S. 389, 13 S.Ct. 602, 37 L.Ed. 493 (1893)). But that is not the case here. As noted above, Hitchcock alleges that she is a citizen of Maryland and that the three movants—defendants Lawrence, Leonard and Sprachman—are citizens of New York or Florida. ¶¶ 2–3. WLA, which is alleged to have no state of incorporation, is also alleged to have its principle place of business in New York, which makes it a citizen of that state for purposes of the exercise of diversity jurisdiction. *In re Balfour MacLaine Int. Ltd.*, 85 F.3d 68, 76 (2d Cir. 1996). However, as further noted above, no place of citizenship is alleged for the other

---

**3.** The amended complaint's further assertion that Richard Bell, Susan Day and the "Doe" and "Roe" defendants also participated in the alleged enterprise, ¶ 5, need not be considered because,

even assuming that these individuals actually exist, they are dismissed from this action. *See infra* at 251.

two named defendants—Richard Bell and Susan Day—and, indeed, the amended complaint states that they may be "fictitious" individuals. ¶ 3. What is more, no place of citizenship is alleged with respect to any of the "Doe" or "Roe" defendants, whose identities are not now known and who may also not exist. ¶ 3.

■ The presence of these several potentially fictitious defendants complicates the exercise of diversity jurisdiction. If it turns out that any of these defendants actually exists, it may also turn out that he or she shares Maryland citizenship with Hitchcock, which would thereby violate the rule of complete diversity. Many courts have faced situations like this, but the proper response to the problem remains an open question in our Circuit. *Schmidt v. Fleet Bank,* 1998 WL 47827 at *15 (S.D.N.Y. Feb.4, 1998). Certain courts have concluded that the presence of "Doe" defendants does not immediately preclude the exercise of diversity jurisdiction. Rather, these courts hold that a plaintiff sues potentially fictitious defendants at her peril because, should it turn out that a non-diverse defendant is later identified, the complaint may then be dismissed for lack of jurisdiction. *See, e.g., Weber v. Kosack,* 1997 WL 666246 (S.D.N.Y. Oct.24, 1997). Here, however, where the possibility that any of the potentially fictitious defendants exists is purely speculative and where, accordingly, none of them have answered either the original or amended complaints, the better practice would seem to be to dismiss all of the Does and "Doe-like" defendants from the action outright. *See Yu v. American Commerce Bank,* 1988 WL 9913 (S.D.N.Y. Jan.29, 1988). Accordingly, in order to assure complete diversity, the amended complaint is dismissed as against John Doe # 1 through John Doe # 10, Richard Roe # 1 through Richard Roe # 10, and Richard Bell and Susan Day.

## C. The Common Law Claims.

■ The amended complaint asserts three claims under the common law of New York: defamation, intentional infliction of emotional distress and prima facie tort. ¶ 33. When exercising diversity jurisdiction, a district court applies the choice of law rules of the state in which it sits in order to determine which state's law is applicable to the matter before the court. *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The choice of law rules of New York with respect to tort actions have recently been reiterated by the Court of Appeals:

> "In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Properties Corp.,* 84 N.Y.2d 519, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994). When the conflict involves rules that *regulate conduct,* the law of the place of the tort governs. *Id.* at 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001.... When the conduct concerns a *loss-allocating* rule, the choice of law analysis is governed by the three principles articulated in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). *See Padula,* 84 N.Y.2d at 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001....

*Sheldon v. PHH Corp.,* 135 F.3d 848, 853 (2d Cir.1998) (emphasis in original).

■ The common law claims asserted in the amended complaint are clearly rules of conduct regulation. *See Padula v. Lilarn Properties Corp.,* 84 N.Y.2d at 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (conduct regulation rules act "to prevent injuries from occurring," while loss-allocation rules "prohibit, assign, or limit liability after the tort occurs"); *Esco Fasteners Co. v. Korea Hinomoto Co.,* 928 F.Supp. 252, 255 (E.D.N.Y. 1996) (conduct rules are those that "govern duty and standard of care," while loss-allocation rules are those such as "vicarious liability, contribution and indemnity"). Thus, the common law claims are governed by the law of the place where the tort occurred, which is the place where the plaintiff's injuries occurred. *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 195, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); 19 N.Y.Jur.2d, *Conflict of Laws,* § 40 at 624 (1982) ("the place where the injury was inflicted is the place of the tort"). Here, Hitchcock suffered her alleged

252

injuries in Maryland and therefore no claim under the substantive law of New York may be stated. Since Hitchcock has expressly stated that her claims are brought under the common law of New York, and since no effort has been made to show that she has any common law claims under the law of Maryland, her common law claims are dismissed.

### D. Leave to Replead.

 Federal Rule of Civil Procedure 15(c) provides that leave to replead should be "freely given." However, leave to replead may be denied where granting it would be futile, "particularly in the case of pleading a claim under a statute such as RICO, which sets forth exacting pleading requirements." *Communication Opportunity, Inc. v. Davis,* 1998 WL 240527 at *3 (citing *In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 402 (2d Cir.1994)). Such futility is clearly present here, where Hitchcock has, on her second attempt, fallen far short of stating a claim under RICO and set forth no facts that suggest that she could ever succeed in this regard. Leave to replead a RICO claim is therefore denied. With respect to claims under Maryland law, however, Hitchcock is granted 30 days from the date of this order to file a second amended complaint that sets forth such claims.

### E. Service of Process.

Leonard and Sprachmann also move for dismissal on the ground that, pursuant to Federal Rule of Civil Procedure 12(b)(5), they were not properly served with the original complaint. Hitchcock, however, has placed before the court the affidavits of service relating to Leonard and Sprachmann. On the basis of these, which establish sufficient service, I find that dismissal would not be proper on this ground.

### F. Sanctions.

 In light of the grant to replead claims under Maryland, consideration of the defendants' motion for sanctions is denied as premature. As in my prior order, however, Hitchcock and her counsel are reminded that an amended complaint that does not set forth a legally cognizable claim could subject them to sanctions under Federal Rule of Civil Procedure 11.

### CONCLUSION

The motions of defendants Lawrence, Leonard and Sprachmann to dismiss the amended complaint for failure to state a claim upon which relief may be granted are GRANTED. The plaintiff shall have thirty (30) days from the date of this order to file a second amended complaint for the purpose of stating claims under the law of Maryland. The motions of Leonard and Sprachmann for dismissal for insufficiency of service of process are DENIED. The motions of Lawrence, Leonard and Sprachmann for sanctions are DENIED.

The amended complaint is dismissed as against Susan Day, Richard Bell, John Doe # 1 through John Doe # 10 and Richard Roe # 1 through Richard Roe # 10.

SO ORDERED.