**Rosemarie R. D'ALESSANDRO, Individually and as Administratrix of the Estate of Angelo M. D'Alessandro, deceased, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**No. 94 CV 654(NG)(CLP).**

United States District Court, E.D. New York.

March 30, 2001.

---

Steven R. Pounian, Robert J. Spragg, Jacqueline M. James, Kreindler & Kreindler, New York City, for plaintiff.

Jeffrey J. Ellis, Michael W. Hecht, Anoushka S. Bayley, Brian P. Sexton, Quirk and Bakalor, P.C., New York City, for defendant.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

This is an action under the Warsaw Convention to recover damages for wrongful death arising from the fall of Angelo M. D'Alessandro from a mobile passenger lounge vehicle, which is an elevated bus, at Mexico City airport on August 19, 1993. Mr. D'Alessandro was a passenger boarding American Airlines Flight 1054 from Mexico City to Dallas, Texas. He was the last passenger to board the mobile lounge, which was used to transport passengers from the terminal to the aircraft parked some distance away, and which was designed so that passengers could walk directly from the terminal gate to the mobile lounge, and directly from the mobile lounge onto the aircraft, without having to use stairways. After boarding, Mr. D'Alessandro stood by the left door of the mobile lounge he had entered. While he was being transported, Mr. D'Alessandro fell through the door of the mobile lounge, which somehow opened, and he plunged approximately fifteen feet to the tarmac, sustaining severe injuries that resulted in his death approximately six weeks later.

Mr. D'Alessandro, a New Jersey resident, had been the Chairman and Chief Executive Officer of Alexander Consulting Group, a subsidiary of Alexander and Alexander Services, Inc., at the time of the accident. Defendant American Airlines, Inc. ("American") is a Delaware corporation with its principal place of business in Texas. American does not dispute that the Warsaw Convention applies and that American is responsible for the operation of the mobile lounge, including the conduct of the local airport authority, Aeropuertos y Servicios Auxiliares, which provided the lounge, and its driver, Reynaldo Paz Ramirez. An American passenger service representative, Sergio Lopez, also was on the lounge when the accident happened.

American moves for partial summary judgment on the ground that there is no evidence that its conduct and the conduct of its agents and representatives rose to the level of culpability required under Article 25(1) of the Warsaw Convention, and therefore the damages that may be recovered are limited to $75,000. American also moves *in limine* to preclude plaintiff from offering evidence of Mr. D'Alessandro's lost earnings or from presenting the testimony of a proposed witness, Michael J. Corey, to establish Mr. D'Alessandro's future earning capacity.

### Limitation of Damages Under Warsaw Convention

■ Article 25(1) of the Warsaw Convention, as applicable at the time of the incident, provides, according to the official English translation of the governing French text, that the $75,000 limitation on damages does not apply "if the damage is caused by [the carrier's] wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be the equivalent of wilful misconduct." Although American argues that "wilful misconduct" is a mistranslation of "dol" in the French text, and that "dol" requires the equivalent of intentional conduct with the intent to cause injury, American concedes that its argument has been rejected by the Second Circuit. *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1027–29 (2d Cir.1996), *cert. denied*, 519 U.S. 1116, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997) (law of forum jurisdiction, not an international standard of "dol", determines what con-

duct constitutes wilful misconduct that deprives a carrier of limited liability protection).

Brink's also held that, in light of a recent Supreme Court decision, *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), the Second Circuit's previous holdings that the law of the forum in cases arising under the Warsaw Convention is federal common law were no longer viable. Instead, the Circuit held, wilful misconduct in a case arising under the Warsaw Convention must be determined by the law that would govern in the absence of the *Warsaw* Convention, *i.e.*, the law of the forum state, New York, including its choice of law rules. 93 F.3d at 1029–30. American's argument that a still more recent Supreme Court decision, *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999), demonstrates that *Brink's* has been implicitly overruled is erroneous. *Tseng* dealt with whether a passenger who was not entitled to recover for personal injury under the Warsaw Convention could nevertheless recover damages under state tort law, and it held that recovery on a state-law cause of action was precluded as long as the incident occurred during the flight or in the course of embarking or disembarking, which is the scope of the Convention's coverage for personal injury to passengers. *Tseng* reaffirmed *Zicherman's* recognition that the Warsaw Convention specifically left certain issues to the law of the forum, stating: "the Court in *Zicherman* determined that Warsaw drafters intended to resolve *whether there is liability*, but to leave to domestic law (the local law identified by the forum under its choice of law rules or approaches) determination of the compensatory damages available to the suitor." *Tseng*, 525 U.S. at 170, 119 S.Ct. 662, citing *Zicherman*, 516 U.S. at 231, 116 S.Ct. 629 (emphasis in original). Nothing in *Tseng* nullifies *Brink's'* holding that the

specific reference in the text of Article 25(1) to the law of the court hearing the case constitutes an explicit direction to apply local law which, under *Zicherman*, is properly state law if no federal statute is applicable.

■ The next question is what law a New York State court would apply. New York courts first look to determine if a true conflict of law issue exists. Unless it appears that other jurisdictions that have a significant interest in the matter in controversy have materially different principles than a New York court would apply, there is no occasion to undertake a conflict of law analysis. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir.1998). New York employs a "flexible approach" of seeking "to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *Brink's*, 93 F.3d at 1030, citing *Babcock v. Jackson*, 12 N.Y.2d 473, 481–82, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). The focus in tort cases is upon which jurisdiction has the most significant interest in the particular issue to be determined. *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). New York courts distinguish in tort cases between "conduct-regulating laws" and "loss-allocating rules." *Brink's*, 93 F.3d at 1031; *Hitchcock v. Woodside Literary Agency*, 15 F.Supp.2d 246, 251 (E.D.N.Y.1998); *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993). As a general rule, the law of the place where the tort occurred is applied to conduct-regulating laws, since that jurisdiction has the greatest interest in regulating conduct inside its borders. "If post-event remedial rules, or loss-allocating rules, are at issue, 'other factors are taken into consideration, chiefly the parties' domiciles.'" *Brink's*, 93 F.3d at 1031, quoting *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d 919,

612 N.E.2d 277. If a loss allocation rule is at issue, and both plaintiff and defendant share a common domicile, the law of that domicile generally is applied. *Cooney,* 81 N.Y.2d at 73, 595 N.Y.S.2d 919, 612 N.E.2d 277.

■ American argues that, under New York choice of law principles, the law of Mexico is applicable. Plaintiff argues that "United States law" applies. Plaintiff further argues that the United States has a greater interest than Mexico in determining a dispute between its domiciliaries. Plaintiff's argument is rejected as an attempt to resurrect a federal common law for Warsaw Convention cases in contravention of *Brink's.* The proper comparison is between the laws of the particular jurisdictions that have an interest in the issue, not between countries. Thus in *Brink's,* the Circuit compared the interests of New York and South Africa, not the United States and South Africa, in deciding that a New York court would apply South African law to determine if theft by the South African carrier's employee in South Africa constituted wilful misconduct attributable to the carrier. 93 F.3d at 1031–32. As will be seen, the New York courts would hold that there is no true conflict between the law of New York and the law of Mexico.

■ Under New York law, wilful misconduct in a Warsaw Convention case is not limited to intentional wrongdoing. In *Goepp v. American Overseas Airlines,* 281 App.Div. 105, 117 N.Y.S.2d 276 (1st Dep't 1952), *aff'd,* 305 N.Y. 830, 114 N.E.2d 37, *cert. denied,* 346 U.S. 874, 74 S.Ct. 124, 98 L.Ed. 382 (1953), the court noted the absence in the case of "necessary elements to establish wilful misconduct," *i.e.,* no proof that defendant interpreted safety regulations in bad faith or "with any intimation that it was incorrect, or that it was arrived at, or effectuated, in a disregard of the possible consequences." *Id.* at 111, 117

N.Y.S.2d 276. The court approved the trial court's charge that wilfulness required "a conscious intent to do or omit doing the act from which harm results to another, or an intentional omission of a manifest duty. There must be a realization of the probability of injury from the conduct, and a disregard of the probable consequences of such conduct." *Id. Goepp* then quoted with approval a treatise on air law which defined wilful misconduct under the Warsaw Convention as " 'a deliberate act or omission which the person doing or omitting—(i) knows is a breach of his duty in the circumstances; or (ii) knows is likely to cause damage to third parties; or (iii) with reckless indifference does not know or care whether it is or is not a breach of his duty or is likely to cause damage.' " *Id.*

■ Subsequent New York decisions expressly reaffirmed *Goepp* and offered other formulations of the "wilful misconduct" standard that did not require a wrongful act committed with the intention of causing injury. *Cohen v. Varig Airlines,* 62 A.D.2d 324, 331–33, 405 N.Y.S.2d 44 (1st Dep't 1978) (intentional omission to perform manifest duty with a realization and disregard of probable consequences); *Rymanowski v. Pan American World Airways, Inc.,* 70 A.D.2d 738, 739, 416 N.Y.S.2d 1018 (3d Dep't 1979), *aff'd on opn. below,* 49 N.Y.2d 834, 427 N.Y.S.2d 795, 404 N.E.2d 1336 (1980) (conscious intent to do or omit doing the act from which harm results); *International Mining Corp. v. Aerovias Nacionales De Colombia, S.A.,* 57 A.D.2d 64, 68–69, 393 N.Y.S.2d 405 (1st Dep't 1977), *aff'd,* 45 N.Y.2d 915, 411 N.Y.S.2d 220, 383 N.E.2d 866 (1978) (quoting with approval Second Circuit's definition of wilful misconduct in *Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F.2d 532, 536–37 (2d Cir.1965), *cert. denied,* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966), as intentional performance of an act with knowl-

edge that it will probably result in injury, or of " 'intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences,' " or an omission to act with knowledge of the probability of injury or " 'in a manner from which could be implied reckless disregard of the probable consequences of the omission.' "). The New York Court of Appeals affirmed *International Mining* "[w]ithout undertaking a precise verbal definition of willful misconduct or its equivalent for purposes of the Convention." 45 N.Y.2d at 917, 411 N.Y.S.2d 220, 383 N.E.2d 866. See also *Alleyn v. Port Authority of New York*, 58 F.Supp.2d 15, 25 (E.D.N.Y.1999) (wilful misconduct in Warsaw Convention case shown by knowledge that the omission to act probably would result in injury or acting or failing to act in a manner that implies reckless disregard of the probable consequences). New York also rejects the argument, similar to the one advanced by American, that French law and its interpretation should be applied in determining the meaning of terms used in the text of the Warsaw Convention. *Rosman v. Trans World Airlines, Inc.*, 34 N.Y.2d 385, 392–95, 358 N.Y.S.2d 97, 314 N.E.2d 848 (1974).

Mexican law is not materially different.[1] American's expert asserts that Mexico, as a civil law jurisdiction, would apply "dolo", which is the same as "dol", as that term is generally understood in civil law countries and, according to the expert, requires an intent to cause injury. The expert could not find any cases or other authorities under Mexican law that specifically dealt with the Warsaw Convention. Also, the affidavit does not address how Mexican law treats intentional conduct that would be characterized as reckless in United States jurisdictions. Most critically, American's expert omitted the crucial information that Mexico (unlike the United States) became a party in 1963 to the 1955 Hague Protocol, which in Article XIII abandoned "dol" entirely by amending Article 25 of the Warsaw Convention to provide that the limitation on liability "shall not apply if it is proved that the damage resulted from an act or omission of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result." The U.S. State Department interprets this provision of the Hague Protocol as being identical to the prevailing definition in common-law jurisdictions of "wilful misconduct," and specifically as that term has been defined in jury charges in New York State courts and in Second Circuit caselaw (which definition, as noted above, has also been adopted in New York). The State Department explains that the amendment was designed to overcome confusion and different connotations that had arisen between civil and common law systems by adopting the definition of conduct that corresponded to wilful misconduct in the latter jurisdictions. S.Exec. Rpt. No. 105–20, Montreal Protocol No. 4, at pp. 15, 47–49, 52–53.

■ American and its expert simply disregarded Mexico's adoption of the Hague Protocol. New York conflict of law rules require the court to consider the law that each jurisdiction actually would apply, whether derived from cases or statutes. *See Schultz* (New Jersey charitable immunity statute); *Cooney* (Missouri workers' compensation statute); *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994) (New York scaffolding statute). A court in

---

1. Since neither party has argued for the application of New Jersey or Texas law, or suggested that these jurisdictions differ from New York or the prevailing rule of courts in the United States that it reflects, the court assumes that the law of these jurisdictions does not differ materially from the law of New York.

Mexico at the time of this accident assuredly would not have disregarded a treaty that Mexico had adopted in favor of some generalized notion of "dol" or "dolo" that had been abrogated in that treaty. Instead, the court would have applied the Hague Protocol's revised formulation of the circumstances in which a carrier's limited liability is lifted, which allows for recovery without limitation not only for acts or omissions to act that are done with intent to cause damage or injury, but also for reckless acts or omissions with knowledge of the probable consequences. Since the applicable rule that would be applied in New York and Mexico does not differ materially, a New York court would not defer to Mexican law.

▮ In addition, even if Mexican law were different from that of New York, it is likely that a New York court would apply New York law. Although plaintiff and defendant do not share a common domicile, a New York court would consider it significant that the law of both plaintiff's and defendant's domiciles is the same and is the same as New York's (or, at least, American does not contest that they are the same). Where the law of the domiciles of plaintiff and defendant are the same, and the accident occurs in a third state, the common law of the domiciles of the parties is applied if the ride is one of loss allocation. *Tkaczevski v. Ryder Truck Rental, Inc.,* 22 F.Supp.2d 169, 173–74 (S.D.N.Y.1998). "Under New York's choice of law rules, when conflicting rules concern the allocation of loss rather than the regulation of conduct, the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy." *Pescatore v. Pan American World Airways, Inc.,* 97 F.3d 1, 13 (2d Cir.1996) (internal quotation marks omitted) (declining to apply Scottish law to determine whether damages for loss of society and grief were available to Ohio plaintiff in Lockerbie disaster). New York includes among its loss-allocation rules "those limiting damages in wrongful death actions." *Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679; *see Barkanic v. General Administration of Civil Aviation,* 923 F.2d 957, 962–63 (2d Cir.1991) (Chinese limitation on liability for wrongful death applied as a loss distribution rule under New York law).

Here, the limitation of damages is based upon the type of conduct involved, *i.e.,* the limit is not available where the conduct is wilful. *Brink's* expressly declined to decide whether a New York court would treat the provision for limitation of liability in Article 25 as a conduct regulating rule or a loss allocation rule. 93 F.3d at 1031. At best, for American, it is a hybrid of loss allocation and conduct regulation. On the facts of this case, Mexico has little apparent interest in limiting the amount of damages that a New Jersey citizen can recover from a Texas-based airline for conduct that gives rise to the carrier's liability under the law applicable in both Mexico and the United States. *Cf. Schultz,* 65 N.Y.2d at 201, 491 N.Y.S.2d 90, 480 N.E.2d 679 (New York does not have a significant interest in applying its own law to a dispute among New Jersey domiciliaries as to whether recovery for admittedly wrongful conduct was precluded by New Jersey's charitable immunity statute); *Curley,* 153 F.3d at 12–16 (applying Mexican law in non-Warsaw Convention case, under New York choice of law rules, to determine that pilot's conduct in reporting criminal activity to Mexican authorities in Mexico was proper under Mexican law).

▮ Under New York law, there are issues of fact for trial that require denial of American's motion for summary judgment. Although the testimony is conflicting, a reasonable jury could find that wilful misconduct occurred when the evidence is viewed most favorably to plaintiff. The mobile lounge was equipped with a securi-

ty bar which was routinely used and that would have prevented the accident, but the driver intentionally decided not to put it in place. The driver contradicted himself, but admitted in some portions of his testimony that he was aware of the risk that a passenger could fall from a crowded mobile lounge while it was moving if he failed to put the bar in place, and that he was specifically aware of the danger to Mr. D'Alessandro. The driver further admitted that he knew it was dangerous to drive the mobile lounge while passengers stood by the door without having first secured the bar. The driver said that he nevertheless proceeded because American's representative told him the flight would be delayed unless he left, testimony which was disputed by the representative but which the court must take as provable for purposes of the motion. Two passengers state in affidavits that the lounge was very crowded and that it was driven erratically and made sudden stops that caused passengers to fall against each other. The driver was unlicensed and had never received training in operation of a mobile lounge. Accordingly, there are genuine factual issues as to whether "wilful misconduct" occurred.

### Proof of Lost Earnings

■ American's motion to preclude plaintiff from offering evidence of lost earnings, or alternatively, to bar the testimony of Michael J. Corey on that subject, is denied for the reasons stated on the record of oral argument. Despite the evidence presented by defendant indicating that Mr. D'Alessandro's superiors at Alexander and Alexander Services, Inc. would have terminated his employment and held him responsible for financial irregularities that came to light shortly before the accident, there are issues of fact as to whether that action would have been permissible under his written employment agreement. Moreover, his ability to earn substantial income elsewhere is not "speculative" in light of the evidence in the record of his extraordinary abilities as a human resources management consultant and his workaholic disposition. As I ruled during the oral argument, American may take Mr. Corey's deposition if it has not done so already, and any further objections to his testimony or additional arguments to exclude or limit other evidence on damages issues are reserved for the time of trial. If any further discovery on damages issues is sought, disputes should be presented to Magistrate Judge Pollak.

### Conclusion

Defendant's motion for partial summary judgment is denied. Defendant's motion *in limine* to preclude evidence of lost earnings or the testimony of Michael J. Core on that subject is denied without prejudice to raising further objections to such testimony at trial.

**SO ORDERED.**